1 | M. KIRBY C. WILCOX (SB# 078576)
MAUREEN K. BOGUE (SB# 194755)
2 | PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street
3 | Twenty-Fourth Floor
San Francisco, CA  94105-3441
4 | Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100
5 | kirbywilcox@paulhastings.com
maureenbogue@paulhastings.com

Attorneys for Defendant
UBS FINANCIAL SERVICES INC.

MARC PRIMO (SB# 216796)
JOSEPH CHO (SB# 198844 )
INITIATIVE LEGAL GROUP LLP
1800 Century Park East, Suite 200
Los Angeles, CA  90067
Telephone:  (310) 556-5637
Facsimile:  (310) 861-9051
mprimo@initiativelegal.com
jcho@initiativelegal.com

Attorneys for Plaintiff
DAVID WAISBEIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID WAISBEIN, individually, and on behalf of other members of the general public similarly situated,<br><br>             Plaintiff,<br><br>     vs.<br><br>UBS FINANCIAL SERVICES INC.; and Does 1 through 20, inclusive,<br><br>             Defendant. | No. C-07-02328 MMC/EDL<br><br>**REDACTED JOINT SUPPLEMENTAL MEMORANDUM IN SUPPORT OF STIPULATED REQUEST FOR APPROVAL OF SETTLEMENT** |

## I. INTRODUCTION

The parties submit this Joint Supplemental Briefing in Support of Stipulated Request for Approval of Settlement in accordance with the Court's September 29, 2008 Order. Specifically, the Court asked that the parties comment on the factors described in *In Re Mego Financial Corp. Securities Litigation*, 213 F.3d 454 (9th Cir. 2000).

## II. CONSIDERATION OF THE RELEVANT FACTORS SUPPORTS APPROVAL OF THE SETTLEMENT

On September 9, 2008, the parties participated in a mediation before David Rotman. The mediation was successful and the parties reached an agreement as set forth in the confidential Settlement Agreement and General Release. Declaration of M. Kirby C. Wilcox ("Wilcox Decl.") ¶ 2, Exh. A.

The parties seek settlement approval only for the claims of Plaintiff David Waisbein ("Waisbein") and not for any class claims. The parties propose to dismiss the class claims without prejudice. In order to allow the Court to evaluate and assess the settlement of Waisbein's individual claims, the parties provide the following information relevant to the applicable *In Re Mego* factors.[1]

### A. Strength of Case

#### 1. Background

UBS employed Mr. Waisbein as a Financial Advisor ("FA") from October 1994 to January 13, 2006. As an FA, Waisbein was responsible for gathering and evaluating financial information from clients and prospective clients, making recommendations for suitable investment products to those individuals, and managing accounts and trades in a manner consistent with agreed investment decisions. These duties and responsibilities are detailed in the document entitled "UBS Client Experience."

---

[1] Although the Court has asked the Parties only to address the *In re Mego* factors, Plaintiff believes that the factors applicable to individual settlements of pending class actions also weigh in favor of approval. *See Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401 (9th Cir. 1989) (superseded by statute).
  *Diaz* held that the district court should inquire into possible prejudice from: (1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, (2) lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations, and (3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests. *Diaz*, at 1408.
  The *Diaz* factors weigh in favor of approving the settlement because: (1) there is no substantial possibility that any putative class members may be relying on the *Waisbein* action because no pre-certification notice was ever sent to putative class members, (2) any applicable statutes of limitation for the state law claims of individual class members were tolled during the pendency of the *Wasbein* action; (3) no class interests are being settled, conceded or released by the settlement and voluntary dismissal.

---

1  Wilcox Decl. ¶ 3, Exh. B.  At deposition, Waisbein confirmed that he performed the duties set forth in
2  the "UBS Client Experience."  Deposition of David Waisbein ("Waisbein Dep.") 163:1-176:11, Wilcox
3  Decl. ¶ 4, Exh. C.

4  Although Mr. Waisbein performed his duties in a manner consistent with UBS' expectations, the
5  business model that he followed to attract and grow his business was unique.  Waisbein Dep. 219:1-
6  220:10.  He developed business almost exclusively by teaching a retirement planning course twice each
7  year at local community colleges.  At the conclusion of each course, he indicated to his students that he
8  was available to provide advice regarding their investments.  Many students took advantage of the
9  opportunity and became his clients.  Waisbein Dep. 262:19-25.  Attracting students to his courses,
10 however, triggered significant expenses in the form of mass mailings to citizens in the cities and towns
11 surrounding the colleges.  The mailings grew from a few thousand brochures per course to over 25,000
12 per course in 2005 – triggering expenses of approximately $15,000 every spring and every fall.
13 Waisbein Dep. 86:1-18; 260:13-261:20.  To defray these costs, Waisbein and UBS agreed at the outset
14 of his employment to split them on a 50-50 basis.  Waisbein Dep. 88:5-11.

15 While employed at UBS, Waisbein also incurred expenses in the form of supplemental payments
16 to a UBS-provided Client Service Associate ("CSA").  These expenses grew to $300 per month by the
17 time of his resignation.  Waisbein Dep. 245:10-246:2.

18 In his first full year of employment, Waisbein had gross income of $68,197.  In 2005, the last
19 year of his employment, his gross income was $337,092.  Wilcox Dec. ¶ 5, Exh. D.

20     **2.**    **Waisbein's Claim for Overtime Wages**
21         **a.**    **Federal Law**

22 The parties agree that Mr. Waisbein faces significant challenges in connection with his claim for
23 overtime wages under the Fair Labor Standards Act ("FLSA").  UBS maintains that Mr. Waisbein
24 satisfied the tests applicable to the administrative exemption.  The relevant regulations expressly apply
25 to "employees acting as advisers or consultants to their employer's clients or customers (such as tax
26 experts or financial consultants) …" (29 C.F.R. § 541.201(c)) and specifically address employees in the
27 financial services industry:
28     Employees in the financial services industry generally meet the duties

> requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products.

29 C.F.R. § 541.203(b) (2004). UBS contends that Mr. Waisbein performed duties that fall squarely within the terms of this clause.

In addition, the Department of Labor confirmed the exempt status of FAs in an Opinion Letter, dated November 27, 2006. Under that letter, a key consideration for exemption analysis is "the exercise of discretion and independent judgment with respect to matters of significance," such as:

> collecting and analyzing a client's financial information, advising the client about the risks and the advantages and disadvantages of various investment opportunities in light of the client's individual financial circumstances, and recommending to the client only those securities that are suitable for the client's particular financial status, objectives, risk tolerance, tax exposure, and other investment needs . . . .

Opinion Letter, Wilcox Dec., ¶ 6, Exh. E. Again, UBS contends that Mr. Waisbein conducted his affairs in a manner fully consistent with this guidance. The Ninth Circuit, in a recent case regarding an analogous opinion letter pertaining to the exempt status of insurance adjusters, has ruled that courts "must give deference to the DOL's interpretation of its own regulations through, for example, Opinion Letters." *See Miller v. Farmers Ins. Exch.*, 481 F.3d 1119 (9th Cir. 2007) ("We must give deference to the DOL's interpretation of its own regulations, through, for example, Opinion Letters."); *see also Hein v. PNC Fin. Servs. Group, Inc*., 511 F. Supp. 2d 563 (E.D. Pa. 2007) (deferring to DOL's regulations and granting defendant's motion for summary judgment on exempt status of financial advisors). Furthermore, when approving the settlement of a previous FA misclassification class action against UBS, this Court noted that the impact of the 2006 DOL Opinion letter was "not to the best interests of the class." *See Glass et al. v. UBS et al.,* U.S.D.C. N.D. Cal. No. C06-4068 MMC, Hearing Transcript 4:3-12; Wilcox Dec. ¶ 7, Exh. F.

### b.  California Law

UBS maintains that Mr. Waisbein also qualifies under the administrative exemption within the

California Labor Code and IWC Wage Order 4.  The Wage Order directs courts to construe exempt work according to certain provisions of the former federal regulations, in particular, 29 C.F.R. 541.207(d)(2).  The former regulations – just like the current regulations – reference the exempt status of securities brokers (although in more arcane terms), by acknowledging the discretion and independent judgment "exercised by *a customer's man in a brokerage house in deciding what recommendations to make to a customer for the purchase of securities*."  (Emphasis added.)  Finally, the IWC is a quasi-legislative body and its Wage Orders have the dignity of statute.  *See Bell v. Farmers Ins. Exch.*, 87 Cal. App. 4th 805, 810 (2001).  As a consequence, Courts must interpret the administrative exemption with reference to the specified regulations.

Thus, even under California law, Waisbein faces an uphill battle on his overtime claim.

### 3. Unreimbursed Expenses

Mr. Waisbein's claim for unreimbursed expenses is based upon: (1) the costs associated with marketing his community college courses; (2) the supplemental payments that he made to his CSA; and (3) dinners for which he paid to entertain his clients.  Under California Labor Code section 2802, an employer is required to "indemnify his or her employee for all *necessary* expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  (Emphasis added.)  UBS maintains that Mr. Waisbein was reimbursed for all necessary expenses.  He chose a unique business model (which he was under no obligation to pursue) and made the decision to market his community college courses to a broad base of individuals.  While UBS believes that he also chose to supplement the salary of his CSA (although he would assert that he "had no choice"), the parties agree that, in order to prevail on this claim, Mr. Waisbein would first need to demonstrate that his expenditures were *necessary* to the performance of his job duties.  There is no certainty of success on this claim.

### B. Risk, Expense, Complexity and Likely Duration of Further Litigation

The uncertainty of the law, and the risk, expense, complexity and likely duration of further litigation favor settlement of this case.  Had the parties not reached a settlement, UBS would have moved for summary judgment on Waisbein's claims.  The losing party likely would have appealed and the parties would have faced the expense and uncertainty of appeal.  Under these circumstances, the certainty and finality of settlement is beneficial for both parties.

### C. The Amount Offered In Settlement

The facts demonstrate that Mr. Waisbein received a fair and equitable sum in return for the release of his claims. While Waisbein never issued a demand to settle his individual claims, his counsel conducted a financial analysis of his losses early in this litigation.

**REDACTED**

### D. Extent Of Discovery And Stage Of The Proceedings

Both parties have had the opportunity to conduct written discovery. UBS has deposed Mr. Waisbein. Wilcox Decl. ¶¶ 4 and 8. Counsel for both parties confirm that they have obtained sufficient information to advise their clients regarding settlement. Cho Decl. ¶ 7; Wilcox Decl. ¶ 8.

### E. The Experience And Views Of Counsel

Both parties are represented by counsel with experience in wage and hour claims. Cho Decl. ¶¶ 2-5; Wilcox Decl. ¶ 1. David Rotman, a well-respected mediator with substantial experience in employment litigation and wage and hour law, mediated the case. Wilcox Decl. ¶ 2. Counsel for both parties participated in negotiations and approved of the settlement.

## III. CONCLUSION

The parties respectfully request that the Court consider this Joint Supplemental Memorandum and approve the settlement.

Dated: October 17, 2008         PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____/s/_____
M. KIRBY C. WILCOX
Attorneys for Defendant, UBS FINANCIAL SERVICES INC.

INITIATIVE LEGAL GROUP LLP

By: _____/s/_____
JOSEPH CHO
Attorneys for Plaintiff DAVID WAISBEIN

LEGAL_US_W # 60215405.3

No. C-07-02328 MMC/EDL     -5-     JOINT SUPPLEMENTAL MEMORANDUM IN SUPPORT OF STIPULATED REQUEST FOR APPROVAL OF SETTLEMENT